Error.

NANCY H. BARNES et al. v. WILLIAM H. McCULLERS, Sr.

*Contract to Convey Land— Vendor and Vendee—Lien—Surety— Equity—Statute of Limitations.*

In 1875 the defendant contracted to sell to B. a tract of land, and executed his bond to convey upon the payment of the purchase-money, evidenced by eight notes, due in successive annual installments. The mother of the vendee signed the notes as surety, it being agreed between her and her son that, upon the payment of the purchase-money, he should convey to her a life-estate in the land, and this agreement was endorsed by the vendor and witnessed by him upon the bond for title at the time of the delivery of the

papers. The mother and son went into joint possession, and paid off several of the notes. Subsequently, without the knowledge of the mother, the defendant and the son made an arrangement by which the remaining notes were surrendered and others substituted, to secure which, with other sums loaned to the son by defendant, mortgages were executed upon the land. Upon information of these facts, in 1889, the mother brought suit to restrain the defendant from selling under the mortgages, to protect her interest, and for general relief: *Held*—

1. That while the mother was no party to the contract to convey the land entered into between the son and the defendant, she, by virtue of the agreement between her and her son, had an equity to have the legal title to a life-estate conveyed to her upon the payment of the purchase-money, and of this the defendant had notice; and that her equity was not subject to a lien for the satisfaction of the balance due on the purchase-money.

2. That upon the surrender of the original notes and the substitution of others to which she was not party, her liability as surety was terminated.

3. That while the entire interest in the land was subject to the payment of any balance that might be due on the purchase-money, and the vendor could not specifically subject the equitable estate of the mother to the payment thereof, the son's interest might be subject to such charge, as well as a lien for the loans subsequently made.

4. That the mother's right of action was not barred by the statute of limitations.

CIVIL ACTION, tried at February Term, 1890, of JOHNSTON Superior Court, *MacRae, J.*, presiding.

The *feme* plaintiff alleges, in substance, that on the 28th of September, 1875, the defendant contracted with her son, Nathan L. Barnes (who, in the course of the action, became her co-plaintiff), to sell to him the tract of land described in the complaint for the price of $6,211.37; that, to secure the payment of this purchase-money, he took from her said son eight several notes, each of seven of them for $800, and the eighth of them for $911.37, one of them going due on the first day of each January next after the day and date first above stated, and the last and largest one of them to be due

on the first day of January, 1883; that the defendant, on the
first above-mentioned day, executed to her said son his bond
for title for said land in the sum of $6,211.37, conditioned
that he would make to the son a good and sufficient deed,
with general warranty, etc., to convey to him the fee-simple
estate therein when and as soon as the said notes should be
paid as they came due; that it was made part of said con-
tract that the *feme* plaintiff should sign and become surety
to each of said notes, which she did, with the distinct under-
standing and agreement that when said purchase-money
should be paid and her son should receive title for the land
from the defendant, her said son would execute to her a deed
sufficient to convey to her an estate for her life or her widow-
hood (she then and ever thereafter and now being a widow);
that the defendant well understood and had full knowledge
of this agreement, and he wrote on the back of said bond
for title a memorandum thereof, in these words: "I, Nathan
L. Barnes, do hereby agree and promise my mother that she
shall have a life-time or widowhood estate upon the premises
mentioned in the within bond. Witness my hand and seal,
this 28th day of September, 1875." That this memorandum
was signed under his seal by her said son, and the execution
of the same was witnessed by the defendant; that she went
upon and she and her son cultivated said land and paid the
first six of said notes as they each matured; that afterwards,
in 1881, the defendant called at her gate and said he had
given her son Nathan a deed for the land, and the latter had
fixed a paper to protect her life-estate; that she had full con-
fidence in the defendant, and bade him keep the paper; that
about this time the two remaining notes were delivered to
her by her son, and she felt secure, as the bonds were all
cancelled; that about the first of January, 1889, her son told
her she had no right to the land; that he could turn her out
of possession; that she at once sent for the defendant and
asked him if she had no estate in the land; that he at first

told her she had none; that in a day or so he told her she did have a life-interest in the land, and produced from his pocket a bond for title for a life-estate or for her widowhood, made to her, executed by her said son, dated July 21st, 1881; that she never knew or suspected until the 25th of December, 1888, that her son had taken a deed for the land and executed three mortgages thereon to the defendant, purporting to secure moneys loaned to her son, aggregating, including the said two last notes for the purchase-money, the sum of $7,640.67; that she is entitled to have the defendant and her said son convey to her a life-estate in said land, she so having an estate in equity, etc.; that said mortgage deeds are a cloud on her equitable title; that she was never consulted concerning the making of any of said mortgages; that she knew nothing of their execution, and never assented to any one of them, and is not conscious of having received any benefit from them, or any one of them, etc. She demands judgment that the defendant be restrained by injunction from selling her life-estate in said land under any power in said mortgages, or any one of them; that he execute to her a quit-claim deed for a life-estate in said land; that he cancel such of said mortgages as have been discharged, and for general relief, etc.

The answer admits the alleged contract of sale of the land between the son of the *feme* plaintiff and the defendant, but it denies that she was a party to it, except that she was surety to the notes for the purchase-money; it alleges, as to the contract between herself and her son, that he had no connection with the same except that he wrote and witnessed the execution thereof on the back of the bond for title; he admits that, in consideration of the *feme* plaintiff's becoming surety to the said notes, her son agreed with her that she should have an estate for life or her widowhood in the land. The answer admits that the defendant conveyed title thereto to her son and took sundry mortgages on the land to secure

108—4

the balance of the purchase-money and money she lent him,
and alleges that $1,000 of the sum lent was to buy an engine
for cotton-gin purposes, a store account, supplies, &c.   The
defendant pleads and relies upon the statute of limitations,
and insists that the Court has not jurisdiction to remove the
alleged cloud upon the *feme* plaintiff's title, &c.   He demands
judgment for $2,500, with interest, and that the same be
declared a first lien upon the said land, and particularly
upon the interest of the *feme* plaintiff therein; and like
judgment against the said son for $1,615.67, with interest,
the same to be a lien upon his interest in the land; that the
present mortgage be foreclosed, and for costs,

The jury found, upon pertinent issues submitted to it, that
the sixth note for the purchase money was paid before the
loan to the son and the mortgages to secure the same; that
the balance of the purchase-money for the land due the
defendant was $1,665. with interest at eight per cent. from
March 3d, 1889, and that the plaintiff's claim is not barred
by the statute of limitations.

The Court gave judgment that the *feme* plaintiff is enti-
tled to a life-estate, or an estate during her widowhood, in the
land, subject to the payment of $1,665, with interest at eight
per cent. annually from March 3d, 1890, and that this sum
be a lien upon her life-estate; that upon the payment of
this sum to the defendant, he shall execute to her a convey-
ance for the said land for her life or widowhood.   The Court
also gave judgment against the male plaintiff in favor of the
defendant for $4,115 67, with interest at eight per cent. from
the 3d March, 1889, this judgment embracing the amount
of the judgment against the *feme* plaintiff, and to be a lien
upon his interest in the land.   Upon failure to pay the said
judgment, a commissioner is directed to make sale of the
land, &c.

The *feme* plaintiff excepted to the judgment, and assigned
as grounds of her exception—

1. That said sum of sixteen hundred and sixty-five dollars should not, under the complaint and answer and issues as found, be a lien and chargeable on her estate for life or widowhood in the land described in the complaint, but that her said interest should be exempt from said lien and charge.

2. That if held to be a lien and charge at all on said life-estate, the amount should be apportioned between the two parts of the fee-simple, according to the quantity and value of each estate—the remainder and the life-estate.

The first issue was as follows: " Was the sixth note given by N. L Barnes and Nancy H. Barnes paid before the execution of the note and mortgage for two thousand five hundred dollars?"

The Court, in instructing the jury, said:

" Now, if this testimony satisfies you that Mr. N. L. Barnes paid defendant the amount of the sixth note, and took up the note, and afterwards, either before he left the defendant, or after he left him and returned, borrowed two thousand five hundred dollars and took up the other two notes, you will respond to this issue, Yes.

" But if you find that Mr. Barnes borrowed two thousand five hundred dollars from the defendant, and then took up the three notes with the money he had borrowed, you will answer, No."

The defendant asked the following instruction, which was refused :

" If the jury believe that Nathan Barnes took currency to McCullers to pay the note in controversy, but stated that he needed the money, and that thereupon a new note was given for the amount of this note and two others, and a new mortgage executed, that the sixth note would be included in the amount of the new mortgage and would not be paid, but merged in the new note."

Defendant excepted to the charge as given, and to the failure to give the charge as requested.

The defendant asked the Court, upon the point reserved as to the cause of action, to rule that the plaintiffs' complaint did not state a cause of action under the case of *Busbee* v. *Macey*, 85 N. C., 329.

Motion overruled. Defendant excepted.

The defendant then asked the Court, upon the admitted facts and the verdict, to adjudge upon the point reserved as to the statute of limitations, and for judgment in favor of the defendant. The Court held that the claim is not barred by the statute of limitations. Defendant excepted.

The *feme* plaintiff and the defendant appealed to this Court.

*Mr. E. W. Pou*, for plaintiff.
*Messrs. J. H. Abell* and *F. H. Busbee*, for defendant.

MERRIMON, C. J.: The contract of sale of the land in question between the son of the *feme* plaintiff and the defendant, as embodied in the bond for title and the notes for the purchase-money, had the effect to put the equitable title to the land in the son. The defendant retained the legal title as security for the purchase-money, and in trust for the son, the vendee, to be conveyed to him when and as soon as the purchase-money should be paid. *Winborn* v. *Gorrell*, 3 Ired. Eq., 117; *Deer* v. *Bellinger*, 75 N. C., 300; *Hinsdale* v. *Thornton, id.*, 381; *Bank* v. *Clapp*, 76 N. C., 48.

Granting, as contended by the defendant, that the *feme* plaintiff had no connection with the contract of the sale of the land just mentioned to her son, except as surety to the notes for the purchase-money, still she purchased from the latter for a valuable and sufficient consideration an estate for her life or widowhood in the land, the legal title to be made to her by her son when and as soon as he should get the same from the defendant. That she had made such contract with her son, the defendant well knew; he had notice

of her rights acquired by it at the time it was made, and ever thereafter, and certainly at the time he conveyed to the son the legal title for the land, lent him money and took the mortgages to secure the same and the balance of the purchase-money. Indeed, he wrote on the back of the bond for title he executed to the son the memorandum of the contract, and witnessed the signing of the same by him. Hence, the defendant lent the money to the son and took the mortgages to secure the same with notice of, and subject to, the right and equitable estate of the *feme* plaintiff purchased from her son, except as to the balance of the purchase-money due to him. As to this, the land remained chargeable with it, not as against the *feme* plaintiff as the defendant's debtor—she owed him no debt in that respect—but as against the son, who was the debtor. The debt, the whole of it, for the purchase-money, was that of the son. The right of the *feme* plaintiff to have the legal title, under the circumstances, was delayed until the son should pay the purchase-money and get the legal title from the defendant in pursuance of the contract between him and the son.

The *feme* plaintiff was not liable for the balance of the purchase-money as surety, because she was discharged from such liability when the defendant surrendered the notes therefor and extended the time and took mortgages of the land to secure the payment of the same. Such surrender of the notes and entire change of the character of the debt, and the new security for the same, had the effect to discharge her liability as surety. This, however, did not relieve the land from the burden of the balance of the purchase-money, because the defendant was not bound to part with the legal title, nor did he intend to do so, until the same should be paid. When he took a mortgage of the land to secure this balance, he simply changed the shape of his security. Moreover, it would be inequitable for the *feme* plaintiff to get the legal title to the estate she so purchased before the balance

of the purchase-money should be paid.   She purchased with
the understanding that the land was chargeable and bur-
dened with the whole debt for the purchase-money, and that
the defendant was not bound, in any case, to part with the
legal title until the debt should be paid, nor did he part with
it for the purpose of relieving it from his just claim upon it
in that respect.

The defendant could not burden the land in question with
a debt due to him from the son mentioned on any account
other than that for the purchase-money thereof, by mortgage
or otherwise, to the prejudice of the *feme* plaintiff in the
respects under consideration, nor can he reasonably com-
plain that he could not, because he took the mortgages with
knowledge and notice of her equitable estate and right to
land, without her knowledge and consent.   *Lynch* v. *Gibson*,
Taylor's N. C. Term Rep., 244; *Pearson* v. *Daniel*, 2 Dev. &
Bat. Eq., 360; *Maxwell* v. *Wallace*, Busbee Eq., 251; *Rut-
ledge* v. *Smith, ibid.*, 283; *Shaver* v. *Shoemaker*, Phil. Eq., 327;
*Staton* v. *Davenport*, 95 N. C., 11.

Nor was the *feme* plaintiff's equitable estate and interest
in the land, as such, chargeable with the balance of the pur-
chase-money due the defendant.   She did not owe it, nor, as
we have seen, was she liable for it as surety, if that could at
all alter the case in this respect.   She did not purchase her
equitable estate from the defendant, but from her son.   She
has no relation in the matter with the former, who might
sell the land to pay the purchase-money, or any part of it,
if need be, but he would not sell it as that of the *feme* plain-
tiff, nor could he so sell it as to charge her interest specially
in order to relieve or disburden that of her son.   She is not
debtor to him.   He has no demand against her for the pur-
chase-money.   He has simply the right to sell the land, or
some part of it, if need be, to pay the balance of the pur-
chase-money, without reference to her estate therein, and as
if she had none.   The Court, therefore, erroneously adjudged

that the balance of the purchase-money is a lien "upon the life or widowhood estate" of the *feme* plaintiff. It should have adjudged that she was entitled to have the legal title to such estate in the land when and as soon as the balance of the purchase-money therefor specified should be paid, and that this sum is a lien upon the land, and that, upon the payment of such balance, the defendant and the said son shall execute to her proper deeds conveying to her such estate as she is entitled in such case to have. The exception of the *feme* plaintiff must, therefore, be sustained.

The exceptions of the defendant are not well founded. There was evidence to warrant the instruction to the jury complained of, and we think it sufficiently embraced that specially asked for by the defendant. The Court suggested two aspects of the evidence, and the jury could readily apply it without directing their attention to a particular view of part of it.

There was no ground for the second exception. This is not an action, in any view of it, to remove a cloud upon the *feme* plaintiff's title. Its purpose is to compel the defendant who conveyed the legal title to the land in question to her co-plaintiff and then lent him large sums of money and took mortgages of the land from him to secure the same and the balance of the purchase-money, with notice of her equitable estate and rights in and to the land, to convey to her, under the circumstances, the legal title to the same, and further, under the circumstances, if need be, to sell the land to pay the balance of the purchase-money, and to the end she may obtain such relief as she may be entitled to have.

Nor is the *feme* plaintiff's right to sue barred by any statute of limitation. Her right to have the legal title to her equitable estate in the land does not arise until the purchase-money shall be paid, and it has not yet been paid. This action is equitable in its nature, and its chief purpose is to enforce an equitable right of the *feme* plaintiff to have

the relief specified against the defendant, as to which the statute of limitations does not apply, unless it be that (*The Code*, § 158) which bars an action for relief, if not otherwise provided for, if the same shall not be commenced within ten years next after the cause of action accrued. If it be granted that this statute applies in cases like the present one, clearly the action was brought within ten years after the right to sue accrued. *Libbett* v. *Maultsby*, 71 N. C., 345; *Ross* v. *Henderson*, 77 N. C., 170.

What we have said disposes of both appeals.

There is error in the plaintiff's appeal, and no error in that of the defendant.

The judgment appealed from must be modified as directed in this opinion, and, so modified, affirmed.

To that end, let this opinion be certified to the Superior Court. It is so ordered.