SKINNER v. TERRY.

(Filed March 1, 1904).

1. JUDGMENTS—*Specific Performance—Recordation—Acts 1885, ch. 147.*

A decree in a suit for specific performance, directing a conveyance and reciting that its effect should be to convey the title, need not be recorded.

2. EJECTMENT—*Trespass—Estates—Specific Performance.*

The holder of an equitable title under a decree for specific performance is entitled to maintain ejectment or trespass for injury to his possession.

3. JUDGMENTS—*Specific Performance—Estates—The Code, sec. 426.*

It is not necessary that a decree in favor of the plaintiff in a suit for specific performance should declare that it should operate as a conveyance in order to constitute a complete adjudication on the rights of the holder of the naked legal title.

ACTION by T. G. Skinner against Harvey Terry, heard by *Judge W. B. Council* and a jury, at Fall Term, 1903, of the Superior Court of PERQUIMANS County.

The *locus in quo* being a large tract of land situate in the counties of Perquimans and Pasquotank, known as the "Great Park Estate," was, on April 1, 1884, the property

of Timothy Ely. On April 24, 1884, said Ely and wife
entered into a contract with John F. Davis, whereby they
bound themselves upon the payment of a certain amount of
money and the performance of certain stipulations to convey
the land to said Davis. At Fall Term, 1892, of the Superior
Court of Pasquotank County the said Davis instituted an
action against Ely and wife and Harvey Terry and wife for
the purpose of enforcing specific performance of said con-
tract. In the complaint therein it was alleged that the plain-
tiff Davis had paid the amount of the purchase-money and
in all other respects performed the stipulations in the con-
tract. The plaintiff further alleged that since the execution
of the contract the said Ely had conveyed said land to the
defendant Terry, who had notice of the plaintiff's equities
and rights. The defendant Terry, answering, denied the
execution of a deed by Ely to him. The cause came on for
trial at January special term of Pasquotank Superior Court,
1894, when, upon appropriate issues, the jury found that the
defendant Ely and wife had executed the contract as alleged;
that the plaintiff Davis had on his part complied with said
contract; that Ely had not complied with his part thereof,
and that "the defendant Terry and wife were not seized of
any title or interest in said land"; that the plaintiff Davis
was the equitable owner of the land and entitled to a con-
veyance thereof from the defendant Ely and wife. There-
upon it was adjudged "that the plaintiff John F. Davis is
the equitable owner in fee of the land (describing it), and
that he is entitled to the present possession thereof and to a
deed of conveyance in fee therefor from the defendant Ely
and wife, and that they are hereby ordered and commanded
to execute, prove and deliver to the said John F. Davis a
good and sufficient deed of conveyance in fee.   *   *   *
And it was further ordered, adjudged and decreed that the
force and effect of this order, judgment and decree is and

shall be to transfer to the said John F. Davis and his heirs the legal title of the land aforesaid, "and to that end it doth decree that from now and henceforth the said John F. Davis doth and shall have and hold that portion of the 'Great Park Estate' above described, unto him and his heirs in fee-simple." The Court directed that the decree be recorded in the office of the Register of Deeds of Pasquotank County. The decree was recorded in Pasquotank County on January 23, 1900, and in Perquimans County on January 7, 1902. Thereafter the said John F. Davis died intestate, and his administrator duly filed a petition for the sale of said land for the purpose of making assets to pay debts. Pursuant to orders duly made in the cause, the said land was sold and purchased by the plaintiff, T. G. Skinner, and a deed therefor executed on December 11, 1900, and duly recorded in Pasquotank County on December 13, 1900, and in Perquimans County on January 7, 1902. On August 15, 1900, the defendant, pursuant to a purchase made by him at a sale made by the Marshal of the Eastern District of North Carolina, under an execution issued upon a judgment recovered by Harvey Terry against Timothy Ely, obtained a deed for said land from said Marshal. It was duly recorded in Pasquotank County on December 10, 1900, and in Perquimans County on October 10, 1900. There was evidence tending to show that the land was situate in both Pasquotank and Perquimans Counties.

The plaintiff requested the Court to instruct the jury that upon the entire evidence they should answer the first and second issues, involving title and possession of the plaintiff and trespass by the defendant, in the affirmative. The Court so charged the jury, and the defendant excepted. The defendant submitted a number of prayers for instructions, all of which were declined. The defendant excepted and appealed.

W. M. Bond and E. F. Aydlett, for the plaintiff.
Rodman & Rodman, G. W. Ward, and B. G. Watson, for the defendant.

CONNOR, J.   The exception to the instructions given in response to the plaintiff's prayer presents the questions raised by the defendant's prayers.   The defendant says that the plaintiff cannot maintain this action for a trespass committed upon that portion of the "Great Park Estate" lying in Perquimans County, for that the decree in the case of John F. Davis against Timothy Ely and others was not recorded in said county until January 7, 1902; whereas, his deed from the Marshal was recorded October 10, 1900.   This contention is based upon the theory that the judgment of the Superior Court of Pasquotank County of January, 1894, operated as a deed from Ely to Davis, and came within the provisions of chapter 147 of Acts of 1885 regarding registration of deeds.   The act provided that "no conveyance of land, nor contract to convey, or lease of land for more than three years, shall be valid to pass any property as against creditors or purchasers for a valuable consideration."   *   *   * This language does not include a decree or judgment of the Court which declares the rights of the parties and adjudges that, by virtue of the facts found by the Court, the prevailing party is the owner of the land.   The effect of the decree was to declare Davis the equitable owner of the land and leave in Ely the naked legal title.   It was not necessary to a complete adjudication of Ely's rights that the further provision in regard to the operation of the decree, as a deed, should have been added.   This Court in *Farmer v. Daniel*, 82 N. C., 152, through *Dillard, J.*, says: "In this case it appears as a fact in the case agreed that the purchaser specifically performed the contract on his part by paying into the office of the Clerk and Master the purchase-money, and thereupon

the right arose to have performance on the part of the heirs acting through the agency of the Court. And the Court of Equity, on report of full payment by the Master, in recognition of this right ordered that the title of the heirs be conveyed by the Master to the purchaser." It was further held in that case that the decree vested in the purchaser a perfect equitable title upon which he could defend against one holding the naked legal title. That the owner of the perfect equitable title may maintain ejectment or other possessory action under our system of procedure may be regarded as settled beyond controversy. *Taylor v. Eatman,* 92 N. C., 601; *Condry v. Cheshire,* 88 N. C., 375.

If, as we have seen, the effect of the decree was to vest a perfect equitable title in Davis, and that the defendant Terry was bound by said decree, it is immaterial whether the provision that it should operate as a deed, as provided by section 426 of The Code, be complied with. It will be observed that the provision of that section is that after the Court shall have declared the rights of the parties, "it shall have power also, to be used in its discretion, to declare in the order then made, or in any made in the progress of the cause, that the effect thereof shall be to transfer to the party to whom the conveyance is directed to be made the legal title of the said property." * * * We think that the failure to insert this clause or to comply with the directions that the decree be recorded, in no manner affects the equitable title which the plaintiff Davis acquired by the decree declaring him to be the equitable owner in fee.

We would not feel authorized to extend the language of chapter 147, Acts 1885, to include a decree of the character before us in this record. But that point is not before us. The effect of this decree is to vest all of the equitable title in Davis which was outstanding in Ely or in the defendant Terry. Certainly the rights of Davis could not be affected

by deed executed thereafter by Ely to Terry, or, as in this case, by the Marshal undertaking to sell the naked legal title outstanding in Ely to his co-defendant Terry. Taken in the strongest light for the defendant, the decree of January, 1894, declared the equitable title in Davis, leaving a naked legal title outstanding in Ely. Terry could acquire no other or better title than was in Ely at the time of his purchase, and, as we have seen, Davis could have maintained an action against Ely for possession of the land or for trespass thereon; so, the plaintiff who has succeeded to his title may maintain an action against Terry for injury to his possession. *Stith v. Lookabill,* 76 N. C., 465.

Whether we place the plaintiff's right to maintain the action upon the theory of an estoppel against Terry or upon the view above suggested that Ely had but a naked legal title, and that the purchaser under such sale took subject to all outstanding equities, we would be brought to the same result. In either aspect of the case his Honor's charge to the jury was correct, and the judgment must be

Affirmed.