IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-491

No. COA21-589

Filed 19 July 2022

Vance County, No. 19 CVS 385

BECKY I. MATTHEWS, ADMINISTRATOR CTA OF THE ESTATE OF ANNA BURWELL HEADLEY, Decedent, and LINDA M. PERRY, et al., PLAINTIFFS,

v.

ERNEST EARL FIELDS, AND VANESSA FIELDS, AND DENISE JONES, AND HER SPOUSE IF ANY, DEFENDANTS.

Appeal by Defendants Ernest Earl Fields and Vanessa Fields from order entered 16 July 2021 by Judge Cindy King Sturges in Vance County Superior Court. Heard in the Court of Appeals 6 April 2022.

*Stam Law Firm, PLLC, by R. Daniel Gibson, for Plaintiffs-Appellees.*

*The Law Offices of Ajulo E. Othow, PLLC, by Ajulo E. Othow, for Defendants-Appellants.*

COLLINS, Judge.

¶ 1 Defendants Ernest Earl Fields and his wife, Vanessa Fields, appeal the trial court's order granting declaratory judgment to Plaintiff Becky I. Matthews, administrator of the Estate of Anna Burwell Headley, deceased ("Estate").[1] The trial

---

[1] Defendant Denise Jones, and her unnamed spouse, if any, are not parties to this appeal.

court's order declares that the Estate is the sole owner of property located at 200 Perkinson Street in Kitrell, North Carolina, and orders the Fields to vacate the Property. We reverse.

## I. Background

¶ 2 Ms. Headley appointed Denise Jones as her attorney-in-fact by document signed and recorded with the Vance County Register of Deeds on 16 February 2002. With the power of attorney, Jones was authorized to, among other things, "sell and convey real estate, and to lease, encumber, or exchange real estate; . . . [and] to accept payment . . . ." Jones, as Ms. Headley's power of attorney, and Ernest Fields duly executed a "Property Rental Agreement" and an "Offer to Purchase and Contract" on 15 January 2014 concerning property owned by Ms. Headley at 20 Perkinson Street[2] in Kitrell, North Carolina. The Property Rental Agreement designates Jones as the Landlord and the Fields as the Tenants of the property and further provides, in pertinent part:

> 3. PERIOD OF LEASE:
>
> 3.1 The initial period of the lease shall start on the 1st day of February in the year 2014
>
> 3.2 Tenant shall lease the property with the right to purchase.   See Offer to Purchase and Contract

---

[2] The original "Property Rental Agreement" and "Offer to Purchase and Contract" state the address of the property at issue is "20 Perkinson Street." At some point after the documents were executed, Vance County legally changed that address to "200 Perkinson Street."

Agreement hereto attached.

. . . .

4. RENTAL:

4.1 The monthly rental for the premises for the initial period is an amount of <u>$450.00</u> (Four hundred-Fifty dollars).

4.2 Rental shall be paid monthly in advance on or before the first day of the month, at the following address: 1345 N Chavis Rd, Kittrell NC 27544

4.3 All monthly rents shall be credited to the purchase price of $50,000 at the time of closing. This shall be reflected in the purchase agreement

. . . .

4.6 Eviction can occur when the Landlord determines that Tenant(s) can no longer meet his/her obligations.

5. ADDITIONAL PAYMENTS BY TENANT:

5.1 The Tenant shall from the date of commencement of this Agreement promptly pay for all expenses incurred by means of electricity and sanitary fees, rubbish disposal and all charges arising out of any telephone or other service installed on the Premises.

The Property Rental Agreement also contains various other provisions addressing, among other things, additional Tenant obligations, Landlord obligations, waiver, and limitation of liability.

The referenced Offer to Purchase and Contract is completed on a standard real estate form. Jones is listed as the Seller and Ernest Fields is listed as the Buyer of property located at 20 Perkinson Street. The Purchase Price of $50,000 is to be paid "in cash at Settlement" and the Settlement Date is "To Be Decided."

¶ 4        Under Section 15. OTHER PROVISIONS AND CONDITIONS, an "x" is placed next to "OTHER:  Residential Rental Agreement, all rents shall be credited toward the purchase price on the settlement date[.]"  Section 18. PARTIES indicates, "This Contract shall be binding upon and shall inure to the benefit of Buyer and Seller and their respective heirs, successors, and assigns."  The document also contains various other provisions.  Neither the Property Rental Agreement nor The Offer to Purchase and Contract was recorded.

¶ 5        Ms. Headley died in December 2014.  The North Carolina Department of Medicaid Recovery filed a claim with the Vance County Clerk of Superior Court on or about 16 May 2015, requesting the appointment of an administrator in the Estate because there was a Medicaid lien against the Estate in the amount of $9,170.62.  Becky Matthews was appointed administrator of the Estate.  Matthews and Linda M. Perry, Ms. Headley's cousin or niece and purported heir to the Estate, filed a verified complaint against Jones and the Fields on 24 April 2019.

¶ 6        The complaint alleged, in part, the following:  The Fields had paid $14,850 in rent to Jones from 1 February 2014 to October 2017, but had not paid rent to Jones or the Estate since October 2017.  The Fields told Matthews that after October 2017, the Fields had paid rent into an escrow account, which should contain $8,550 as of 1 April 2019.  The Fields had not provided Matthews with information about the account.  Matthews and Perry had "made demand in writing to the . . . Fields, by and

through their attorney, that they vacate the property immediately" but the Fields "have refused to vacate the house when requested." The Fields indicated to Matthews that they believed that "pursuant to the 'alleged' rental agreement and option to purchase contract . . . they 'own' the house," but Matthews and Perry "believe and so allege that the . . . Fields never intended to purchase the house from the [E]state[.]" Matthews and Perry asserted claims for breach of contract and conspiracy to commit fraud and conversion, and sought to recover possession of the property.

¶ 7     The Fields filed an answer on 24 June 2019.[3] On 3 February 2021, Matthews filed a Motion for Declaratory Judgment and Order to Vacate the Residence as to the Fields. In her motion, Matthews alleged, in part: At some time prior to May 2020, Matthews attempted to evict the Fields from the property. At the eviction hearing, the Fields' attorney presented the Property Rental Agreement and Offer to Purchase and Contract to the magistrate and argued the Fields could not be evicted as they owned the property. In May 2020, the Fields indicated they would buy the property if they were given credit for all payments made. Matthews "searched the Vance County Register of Deeds offices and found the documents . . . from [Ms.] Headley has

---

[3] Jones did not answer Plaintiffs' complaint. The Vance County Clerk of Court granted entry of default against Jones. On 3 February 2021, Matthews filed a Motion for Default Judgment against Jones, seeking to collect $25,200 in payments the Fields had allegedly paid to Jones. The trial court granted Matthews' Motion for Default Judgment against Jones on 8 March 2021 for $25,200.

not been recorded . . . and therefore is not enforceable." Matthews informed the Fields that that they "are 'hold over tenants' and they have been given the required notice that they breached the terms of the Lease" and must vacate the property. Matthews sought to recover certain rents paid by the Fields. Further, Matthews moved the court to clear title to 200 Perkinson Street and order the Fields to vacate the property.

¶ 8        Matthews' declaratory judgment motion came on for hearing on 19 April 2021. The Fields were not present. The trial court entered a Declaratory Judgment and Order on 28 April 2021.[4] The Fields filed a motion to set aside that order because they had not received notice of the 19 April 2021 hearing. The trial court granted the Fields' motion. Matthews' declaratory judgment motion again came on for rehearing on 12 July 2021. After hearing arguments of counsel and reviewing the court file, the trial court entered an Order on 16 July 2021 that is substantially identical to the 28 April 2021 Declaratory Judgment and Order, as amended by the 6 May 2021 order, that was set aside. The trial court found, in relevant part, as follows:

> 2. The real property involved in this action is located in Vance County, NC, at 200 Perkinson Street, Kitrell, NC.[5]
>
> 3. This real property was owned by Anna B. Headley, who

---

[4] The trial court entered an Amended Declaratory Judgment and Order on 6 May 2021, correcting the street address of the property.

[5] The Order indicates in a footnote, "[1] The original 'Offer to Purchase' contract states the address of the property at issue is '20 Perkinson Street.' At some point after that document was executed, Vance County legally changed that address to '200 Perkinson Street.'"

died on 18 December 2014.

4. On or about 16 May 2015, the Department of Medicaid Recovery filed a claim with the Vance County Clerk of Superior Court, requesting the appointment of an administrator in the Headley estate since there was a Medicaid Lien in the amount of $9,170.62 against the estate.

5. Plaintiff Becky I. Matthews (hereinafter Plaintiff Matthews) became the duly appointed Administrator of the Estate of Anna Burwell Headley by the Vance County Clerk of Superior Court on 22 August 2017.

6. Plaintiff Matthews learned that prior to decedent's death, decedent owned property located at 200 Perkinson Street in Kittrell, NC.

7. Defendant Jones was "Power of Attorney" for decedent.

8. Prior to decedent's death, Defendant Jones executed an "Offer to Purchase" contract with Defendant Ernest Fields and Defendant Vanessa Fields (hereinafter Defendants Fields) for the real property and residence owned by decedent located at 200 Perkinson Street, Kittrell, NC.

9. Plaintiff Matthews searched the records of the Vance County Register of Deeds offices and learned the "Offer to Purchase" contract between Defendant Jones and Defendants Fields was not recorded as required by the provisions of N.C.G.S. § 47G-2(d).

10. Under the terms of the "Offer to Purchase" lease, Defendants Fields were to pay $450.00 per month for rent which will be credited towards the purchase price of $50,000.00 for the property located at 200 Perkinson Street, Kittrell, NC.

11. Plaintiff Matthews sought to collect the back rent on the Perkinson Street property and to sell such real

property in order to satisfy the Medicaid lien against that property, and to distribute any excess funds to the heirs of the Estate of Anna Burwell Headley.

12. Plaintiff Matthews informed Defendants Fields that they are "hold over tenants" and that they have been given the required notice that they have breached the terms of the Lease, and that they must vacate the 200 Perkinson Street property.

13. Plaintiff Matthews made several demands upon Defendants Fields to vacate the property, and has advised them, through their attorney at the time, that they were in default of the terms of the Lease and would not benefit from the terms of the Lease.

¶ 9     Based on these findings, the trial court concluded in relevant part:

4. Defendant Jones did not fulfill the statutory requirements pursuant to N.C.G.S. § 47G-2, et seq. in her attempt to execute an "Offer to Purchase" of the property located at 200 Perkinson Street, Kittrell, NC.

5. Because the "Offer to Purchase" the 200 Perkinson Street property was not recorded with the Vance County Register of Deeds pursuant to N.C.G.S. § 47G-2(d), it is not an enforceable contract for purchase. Rather, it is only a rental agreement.

6. Defendants Fields do not have an ownership interest in the 200 Perkinson Street, Kittrell, NC real property or the residence thereon.

7. The Estate of decedent Anna Burwell Headley is the sole owner of the real property located at 200 Perkinson Street, Kittrell, NC.

¶ 10     The trial court ordered:

1. The sole owner of the property located at 200 Perkinson

> Street, Kittrell, NC is the Estate of Anna Burwell Headley.
>
> 2. Defendants Fields do not have an ownership interest in the 200 Perkinson Street, Kittrell, NC property.
>
> 3. Defendants Fields are granted 30 days from the file-stamped date of this ORDER to remove themselves and their personal property from the 200 Perkinson Street, Kittrell, NC property.

The Fields timely appealed.

## II.  Discussion

¶ 11        The Fields argue that the trial court erred by concluding that the "Offer to Purchase" is not an enforceable contract for purchase and is only a rental agreement because it was not recorded; concluding that the Fields have no ownership interest in 200 Perkinson Street; and ordering the Fields to vacate the property.

### A.  Standard of Review

¶ 12        We review an order entered in a declaratory judgment action by a trial court sitting without a jury "to determine whether competent evidence supports the findings, whether the findings support the conclusions, and whether the conclusions support the judgment." *Carolina Mulching Co. LLC v. Raleigh-Wilmington Invs. II, LLC*, 272 N.C. App. 240, 244, 846 S.E.2d 540, 544 (2020), *aff'd*, 378 N.C. 100, 2021-NCSC-79 (citation omitted).  "Unchallenged findings of fact are presumed correct and are binding on appeal."  *Id.* (citation omitted)  Conclusions of law are

reviewed de novo. *Id.*

**B. Option Contract.**

¶ 13   The Fields first argue that the Property Rental Agreement together with The Offer to Purchase and Contract (collectively, the "Writings") constitute a valid option to purchase contract executed with a residential lease agreement, pursuant to N.C. Gen. Stat. § 47G. The Fields argue that because they retained an enforceable option to purchase, the trial court erred by concluding that they have no ownership interest in the property and ordering them to vacate the property.

¶ 14   Chapter 47G governs "Option to Purchase Contracts Executed with Lease Agreements." "[A]n option contract is a contract by which the owner agrees to give another the exclusive right to buy property at a fixed price within a specified time. In effect, an owner of property agrees to hold his offer [to sell] open for a specified period of time." *Murray v. Deerfield Mobile Home Park, LLC*, 277 N.C. App. 480, 2021-NCCOA-213, ¶ 42 (citation omitted), *disc. review dismissed*, 378 N.C. 366, 860 S.E.2d 921 (2021). An option contract must contain the information enumerated in N.C. Gen. Stat. § 47G-2(b), including "[t]he time period during which the purchaser must exercise the option." N.C. Gen. Stat. § 47G-2(b)(7) (2014).

¶ 15   Here, the Writings fail to include a provision stating that Jones, on behalf of Ms. Headley, agreed to sell 200 Perkinson Street to the Fields at the Fields' request within a *specified period of time*, as required by N.C. Gen. Stat. § 47G-2(b)(7). *See*

*Murray*, 2021-NCCOA-213, ¶ 42 ("An option contract does not exist if 'there is no language indicating that [the seller] in any way agreed to sell or convey [their] real property to [a prospective buyer] at their request within a *specified period of time*.'") (citation omitted); *Normile v. Miller*, 313 N.C. 98, 106, 326 S.E.2d 11, 17 (1985) (explaining that a seller's promise to hold an offer open for a specified period of time is a "necessary ingredient" to the creation of an option contract). Accordingly, the trial court did not err by concluding that the Fields "do not have an ownership interest in the 200 Perkinson Street" property because the Writings do not form an option contract.[6]

## C. Installment Land Contract

¶ 16    The Fields argue, in the alternative, that the Writings constitute an installment land contract governed by N.C. Gen. Stat. § 47H.[7] The Fields argue that by paying rent in installments credited toward the purchase price, they obtained an ownership interest in 200 Perkinson Street, and the trial court erred by determining otherwise and ordering them to vacate the property.

¶ 17    Chapters 47G and 47H of our general statutes were enacted into law in 2010 with the goal of protecting purchasers who enter into real estate purchase contracts

---

[6] In light of this conclusion, we do not address the Fields' remaining arguments regarding option contracts.

[7] The Fields timely raise this argument in their principal brief, albeit fleetingly, and expound upon it in their reply brief.

with financing arrangements that are alternative to traditional mortgage financing.

Chapter 47H governs Contracts for Deeds.  A contract for deed is

> [a]n agreement whether denominated a "contract for deed," "installment land contract," "land contract," "bond for title," ["lease to buy,"] or any other title or description in which the seller agrees to sell an interest in property to the purchaser and the purchaser agrees to pay the purchase price in five or more payments exclusive of the down payment, if any, and the seller retains title to the property as security for the purchaser's obligation under the agreement.

N.C. Gen. Stat. § 47H-1 (2014).  An installment land contract

> is a financing device in addition to being a contract dealing with the necessary details of the sale and purchase . . . . [T]he vast majority of [installment land contracts] transfer possession to the vendee at the beginning of the payment period.  Legal title remains in the vendor as security for payment of the purchase price.

*Boyd v. Watts*, 316 N.C. 622, 626-27, 342 S.E.2d 840, 842 (1986) (quoting J. Webster, *Real Estate Law in North Carolina* § 138 (Hetrick Rev. 1981)).  While the buyer is making payments to the seller, the buyer is considered to have "equitable title" to the property.  *In re Foreclosure of Deed of Tr. Given by Taylor*, 60 N.C. App. 134, 139, 298 S.E.2d 163, 166 (1982) (holding that "the installment contract for sale of the security property transferred equitable title therein to the purchaser and constituted a 'conveyance' within the meaning and intent of that term as used in petitioner's due-on-sale clause"); *Barnes v. McCullers*, 108 N.C. 46, 52, 12 S.E. 994, 996 (1891) ("The

contract of sale of the land in question between the son of the *feme* plaintiff and the defendant, as embodied in the bond for title and the notes for the purchase-money, had the effect to put the equitable title to the land in the son."). As an equitable title holder, the buyer has an interest in the property that is the subject of the land installment contract. *See id.*; *see also Skinner v. Terry*, 134 N.C. 305, 309, 46 S.E. 517, 518 (1904) ("That the owner of the perfect equitable title may maintain ejectment or other possessory action under our system of procedure may be regarded as settled beyond controversy." (*citing Taylor v. Eatman,* 92 N.C. 601; *Condry v. Cheshire*, 88 N.C. 375)).

¶ 18    By contrast, a lease "is a contract, by which one agrees, for a valuable consideration, to let another have the occupation and profits of land for a definite time." *Carolina Helicopter Corp. v. Cutter Realty Co.*, 263 N.C. 139, 143, 139 S.E.2d 362 (1964). Leases do not involve the sale of real property. *See id.*

¶ 19    "Whenever a court is called upon to interpret a contract[,] its primary purpose is to ascertain the intention of the parties at the moment of its execution." *Gilmore v. Garner*, 157 N.C. App. 664, 666, 580 S.E.2d 15, 18 (2003) (quotation marks and citation omitted). "It must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean." *Hartford Accident & Indem. Co. v. Hood*, 226 N.C. 706, 710, 40 S.E.2d 198, 201 (1946) (citations omitted). Under well-settled principles of legal

construction, when "the language of a contract is clear and unambiguous, construction of the contract is a matter of law for the court." *Hagler v. Hagler*, 319 N.C. 287, 294, 354 S.E.2d 228, 234 (1987).

¶ 20        Here, the Writings unambiguously formed an installment land contract, not a lease. Although not expertly drafted, the Writings unequivocally memorialize the then-present intent of Ms. Headley, through Jones, and the Fields to enter into a contract for the sale of the property. Under the Property Rental Agreement, the Fields agreed to make monthly payments of $450 on or before the first day of the month and "[a]ll monthly rents shall be credited to the purchase price of $50,000 at the time of closing. This shall be reflected in the purchase agreement." The Property Rental Agreement specifies that the Fields "shall lease the property with the right to purchase. See Offer to Purchase and Contract Agreement hereto attached." The Fields are to "pay for all expenses incurred by means of electricity and sanitary fees, rubbish disposal and all charges arising out of any telephone or other service installed on the Premises" and must "promptly attend to any repair that may be necessary and in general attend to the upkeep and maintenance of the Premises, [or] alternatively to reimburse [Jones] for the cost of replacing or repairing any breakages or defects."

¶ 21        In turn, the Offer to Purchase and Contract Agreement specifies a purchase price of $50,000 and indicates that per the "Residential Rental Agreement, all rents shall be credited toward the purchase price at the settlement date." The Offer to

Purchase and Contract Agreement further specifies that "[t]he deed is to be made to: Ernest E. Fields." The Writings formed an installment land contract. *See Boyd*, 316 N.C. at 627, 342 S.E.2d at 843.

While an installment land contract is a security device, it lacks many of the formalities and buyer protections included in mortgage laws. Like an option to purchase, an installment land contract must include certain information, where applicable,[8] including certain legal disclosures, designed primarily to protect the buyer. *See* N.C. Gen. Stat. § 47H-2(b). Pursuant to section 47H-2(d), within five business days after a land installment contract has been signed and acknowledged by both the seller and the purchaser, "the *seller* shall cause a copy of the contract or a memorandum of the contract to be recorded in the office of the register of deeds in the county in which the property is located." N.C. Gen. Stat. § 47H-2(d) (2014) (emphasis added). "A person, *other than a seller and purchaser*[,] may rely on the recorded materials in determining whether the requirements of this subsection have been met." *Id.* (emphasis added). "A *purchaser* may bring an action for the recovery of damages, to rescind a transaction, as well as for declaratory or equitable relief, for a violation of this Chapter." N.C. Gen. Stat. § 47H-8 (2014) (emphasis added).

Here, neither the Property Rental Agreement nor the Offer to Purchase and

---

[8] For instance, "[t]he amount of the purchaser's down payment" N.C. Gen. Stat. § 47 H-2(b)(6), would only be required if the purchaser made a down payment.

Contract Agreement were recorded. However, it was Jones, on behalf of Ms. Headley as the seller, who was required to cause a copy of the Writings to be recorded. The purpose of recordation is to put the world on notice of the Fields' interest in the property, preventing Jones, or Headley's heirs, successors, or assigns, from conveying the property outright to another investor who could take the property without notice of the Fields' rights, or from encumbering the Property with a mortgage that could deplete the value of the Property. Jones' failure to record does not transform the purchase contract into a rental agreement, nor does it entitle Ms. Headley, her "respective heirs, successors, [or] assigns," to rescind the contract. *See Scott v. Jordan*, 235 N.C. 244, 248, 69 S.E.2d 557, 561 (1952) ("When an owner of land contracts to sell and convey it and dies intestate without doing so, his heirs take the property subject to (1) the equities of the purchaser under the contract, and (2) the rights of the administrator and the distributees of the owner under the doctrine of equitable conversion."). Accordingly, to the extent the trial court concluded that because the Writings, or Offer to Purchase and Contract Agreement alone, were not recorded it was not an enforceable contract for purchase and was "only a rental agreement," the trial court erred.

¶ 24        Moreover, because the Fields have equitable title in 200 Perkinson Street, the trial court erred by concluding that the "Fields do not have an ownership interest in the [property]" and that Ms. Headley's estate "is the sole owner of the real property

located at 200 Perkinson Street[.]" The trial court thus erred by ordering the Fields to vacate the Property.

### III.    Conclusion

The Writings formed a land installment contract, and the Fields have equitable title in 200 Perkinson Street; Jones' failure to record the Writings does not convert the land installment contract into a lease. Because the Fields have an ownership interest in the property, the trial court erred by declaring the Estate the sole owner of the property and ordering the Fields to remove themselves and their personal property from 200 Perkinson Street. The trial court's order is reversed.

REVERSED.

Judges ARROWOOD and JACKSON concur.